UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MLake 20, LLC d/b/a Clayview County Club,<br><br>              Plaintiff,<br><br>  vs.<br><br>West Bend Mutual Insurance Company,<br><br>Serve:  West Bend Mutual Insurance Company<br>         c/o Missouri Director of Insurance<br>         301 W. High Street, Room 530<br>         Jefferson City, MO 65101,<br><br>              Defendant. | Case No.: 4:20-cv-774 |

## COMPLAINT

Plaintiff MLake 20, LLC d/b/a Clayview County Club ("Plaintiff" or "Clayview"), by and through its undersigned counsel, and for its Complaint against West Bend Mutual Insurance Company ("Defendant" or "West Bend"), hereby states and alleges as follows:

## NATURE OF THE ACTION

1. Clayview brings this first-party insurance coverage action against West Bend for breach of contract and vexatious refusal to pay a claim pursuant to Mo. Rev. Stat. §§ 375.296 and 375.420. This action arises out of West Bend's wrongful refusal to indemnify Clayview for property damage, lost revenue, and code upgrade coverage in connection with a covered wind loss and its unreasonable, tortious, and vexatious handling of Plaintiff's claim.

2. Clayview owns and operates a swim, tennis, and fitness club located at 7990 North Farley Avenue, Kansas City, Missouri 64158. Clayview offers members indoor and outdoor tennis, swimming and diving, fitness, and other recreational activities and social events.

3. West Bend issued Clayview Commercial Property Policy No. A142139 03, effective May 9, 2019 through May 9, 2020 (the "Policy"). A true and accurate copy of the Policy is attached hereto as **Exhibit A**.

4. In August 2019, Clayview suffered extensive damage as the result of inclement weather and strong winds (the "Loss"). After Clayview notified West Bend of the Loss and requested indemnity, West Bend employed a number of strategies designed to avoid honoring its contractual obligations.

5. West Bend initially denied coverage for part of the Loss, invoking a clearly inapplicable Policy exclusion.

6. After Clayview retained counsel to obtain the coverage it had paid for, who then demanded indemnity under the Policy, West Bend agreed to cover the Loss. However, after assessing the full extent of damages, West Bend changed its position a few months later and erroneously declared that Clayview had failed to obtain adequate insurance coverage and was subject to a coinsurance penalty pursuant to a provision in the Policy.

7. Despite the fact that Clayview increased its total insurance coverage in May 2019 when the Policy was renewed and provided two independent property appraisals showing Clayview had purchased ample insurance coverage at the time of the Loss, West Bend has continued violate to its duties and obligations under the Policy and has refused to indemnify Clayview. Accordingly, Clayview asks this Court to enforce West Bend's obligations by awarding Clayview all sums that have been wrongfully withheld in connection with the Loss.

## THE PARTIES

8. Plaintiff Clayview is a limited liability company organized and existing under the laws of Missouri. Clayview is comprised of three members: (1) Paco Development, LLC; (2)

CNPII, LLC; and (3) Thackeray Investments, LLC. Paco Development, LLC's sole member is Dave Johnson, a Missouri citizen. CNPII, LLC's only member is Rick Paul, a Missouri citizen. Thackeray Investments, LLC has one member, Chad Sneed, a Missouri citizen.

9. On information and belief, West Bend is a foreign corporation organized and existing under the laws of Wisconsin with its principal place of business in Wisconsin.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11. This Court has personal jurisdiction over the Defendant because West Bend is or was, at all relevant times, licensed to sell insurance in the State of Missouri, engaged in the business of writing insurance policies in the State of Missouri, conducts and continues to conduct a significant amount of business in the State of Missouri, contracted to insured property located in the State of Missouri, and this action arises out of or relates to West Bend's contacts in the State of Missouri.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this claim occurred in this District and the property that is the subject of this action is situated in this District.

## FACTS

**A. The Insurance Policy at Issue**

13. From May 9, 2019 through May 9, 2020, West Bend issued Clayview the Policy, which insured Clayview at the time of the Loss.

14. Clayview is the only named insured on the Policy and the Declarations lists Clayview's premises at 7990 North Farley Avenue, Kansas City, Clay County, Missouri 64158 as the only scheduled location.

15. The Policy provides Clayview blanket Building and Business Personal Property coverage for the North Farley location up to a combined limit of $7,360,020.

16. The Policy's Building and Personal Property Coverage Form, in relevant part, provides:

> **A. Coverage**
>
> We [West Bend] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **1. Covered Property**
>
> Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
>
> > **a. Building**, meaning the building or structure described in the Declarations….
> >
> > **b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:
> >
> > **(1)** Furniture and fixtures;
> >
> > **(2)** Machinery and equipment;
> >
> > **(3)** "Stock";
> >
> > **(4)** All other personal property owned by your and used in your business;
> >
> > …

4

Case 4:20-cv-00774-BCW   Document 1   Filed 09/25/20   Page 4 of 16

17. "Covered Causes of Loss" means "direct physical loss unless the loss is excluded or limited in this policy"

18. Neither wind or wind-driven rain is an excluded cause of loss.

19. The Policy's Loss Payment section, in pertinent part, states:

> **4. Loss Payment**
>
> **a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>
> **(1)** Pay the value of lost or damaged property;
>
> **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;
>
> **(3)** Take all or any part of the property at an agreed or appraised value; or
>
> **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.
>
> **b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.
>
> …

20. The Building and Personal Property Coverage Part also contains a coinsurance provision in which Clayview agrees to maintain a certain percentage of insurance coverage. However, the coinsurance provision does not apply as long as Clayview purchases insurance coverage of at least ninety percent (90%) of the total property value.

21. The Policy also contains supplemental coverage for repair costs incurred as a result of building code or ordinance requirement.

22. The "Building Ordinance Or Law Coverage" states:

**C. Building Ordinance Or Code Coverage**

The following coverage is added to Section **A.5. Coverage Extensions**:

1. If the Replacement Cost option is indicated in the Declarations for a covered building damaged by a covered cause of loss, we will pay:
   …
   **c. Coverage C – Increased Cost of Construction Coverage**

   **(1)** With respect to the building that has sustained covered direct physical damage, we will pay the increased costs to:

   **(a)** Repair or reconstruct damaged portions of that building; and/or

   **(b)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

   when the increased cost is a consequence of a requirement to comply with enforcement of the minimum standards of the ordinance or law.

   However:

   **(a)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

   **(b)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

   The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.
   …

23. The Building Ordinance coverage covers either the actual increased cost of construction or $50,000, whichever is less.

24. In addition to the Building and Personal Property coverage, the Policy also provides separate coverage for business interruption expenses.

25. The Business Income and Extra Expense coverage contains a one-hundred percent (100%) coinsurance requirement and coverage is provided for the same "Covered Causes of Loss" as listed under the Building and Personal Property coverage.

26. In relevant part, the Business Income and Extra Expense Coverage Form provides:

> **A. Coverage**
>
> **1. Business Income**
>
> Business Income means:
>
> > **a.** Net Income (Net Profit of Loss before income taxes) that would have been earned or incurred; and
> >
> > **b.** Continuing normal operating expenses incurred, including payroll.
> >
> > ...
>
> We [West Bend] will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.
> …

27. Business Income coverage is triggered 72 hours after a covered cause of loss occurs and carries a $747,571 limit of insurance.

**B.     Clayview's Covered Loss**

28. On or about August 15, 2019, severe thunderstorms, including straight-line winds, wreaked havoc to several Northern Kansas City, Missouri communities, causing significant property damage. Clayview was among the properties damaged.

29. As a direct and proximate result of the storm, Clayview suffered extensive property damage, including but not limited to, damage to the clubhouse, indoor tennis facility, an inflatable membrane dome that covered several outdoor tennis courts, tennis court surfaces, fencing, and landscaping throughout the property. The storm also damaged or destroyed various personal property items Clayview used in connection with its business.

30. Because the storm had damaged both the indoor tennis facilities and the inflatable dome that covered several outdoor courts, Clayview was severely limited in its ability to make tennis courts available to its members, including hosting private and group tennis lessons and tournaments, while the courts were unusable.

31. On August 16, 2019, Clayview timely tendered notice of the claim to West Bend and requested coverage for the Loss (the "Claim").

32. West Bend acknowledged receipt of the Claim and performed and initial inspection of the property, but later informed Clayview that the inflatable dome was not covered under the Policy.

33. However, West Bend later reversed its decision and agreed to indemnify Clayview for the entire Claim.

34. On information and belief, and on that basis alleges, West Bend never intended to indemnify Clayview for the Loss and actively sought to limit the amount it paid out in connection with the Claim.

**C.    The Dispute Over Clayview's Property Value**

35. On October 4, 2019, West Bend sent Newel Anderson, an insurance appraiser, of Anderson Insurance Services, LLC, to conduct a second inspection of Clayview's property.

36. Clayview thought Anderson's inspection was to reinspect and reassess the damage related to the Claim, but later discovered the inspection was solely for the purpose of appraising the property value to justify West Bend's coinsurance penalties.

37. Anderson provided Clayview his appraisal on or about November 19, 2020. A copy of Anderson's appraisal is attached hereto as **Exhibit B**.

38. Relying on Anderson's appraisal, West Bend alleged that Clayview was underinsured and subject to coinsurance penalties pursuant to the coinsurance provision of the Policy. Accordingly, West Bend sought to reduce any and all payments made in connection with the Building and Personal Property damage based on the coinsurance penalty.

39. Clayview disputed West Bend's contention, pointing out Clayview had increased its insurance coverage to $7,360,020 when the Policy was renewed in May 2019, and requested West Bend honor its obligations under the Policy.

40. West Bend ignored Clayview's request and reiterated its position that Clayview would only receive partial payment for the Claim.

41. In response, Clayview retained its own independent contractor, BCCM Construction Group ("BCCM"), to assess Clayview's property value. BCCM appraised the property at $6,455.575 – nearly a million dollars less than the insurance coverage Clayview purchased under the Policy. A copy of BCCM's appraisal is attached hereto as **Exhibit C**.

42. Despite this fact, West Bend summarily rejected BCCM's valuation and deducted the coinsurance penalties from the indemnity paid to Clayview.

43. Believing that even BCCM's appraisal was high, Clayview hired a second independent appraiser, Ken Bell of Bliss Associates, LLC ("Bliss"), to appraise the property value.

44. On May 29, 2020, Bliss gave Clayview its report (the "Bliss Report") which concluded that the retrospective insurance value of Clayview's property at the time of the August 2019 Loss was $4.3 million – once again, well within Clayview's insurance coverage. A copy of the Bliss Report is attached hereto as **Exhibit D**.

45. On the same day, Clayview tendered the Bliss Report to West Bend, demanding West Bend rescind the property coinsurance penalties and indemnify Clayview for the Loss.

46. But despite the unequivocal evidence that Clayview had complied with the coinsurance requirement by securing adequate coverage, West Bend still refused to satisfy its duties and obligations under the Policy and acknowledge the coinsurance penalties were improper.

47. Instead, for the purpose of further delay, West Bend advised Clayview it intended to invoke the appraisal provision of the Policy to resolve the dispute concerning the property value if Clayview didn't agree to West Bend's loss calculations.

48. The Policy's appraisal provision provides "either party may make written demand for an appraisal of the loss" to resolve disagreements on the value of the covered property.

49. Clayview agreed to abide by the appraisal provision, but West Bend refused to proceed with the appraisal process based on, at best, an ambiguity in the Policy.

50. West Bend has applied a 17.5% property coinsurance penalty to the Building and Personal Property insurance proceeds which, in total, reduces the sum owed to Clayview by $204,662.55.

51. In spite of the overabundance of evidence showing Clayview was properly insured at the time of the Loss, West Bend has continually refused and/or failed to indemnify Clayview.

52. Clayview has fulfilled all conditions precedent to coverage under the Policy, including but not limited to, payment of premiums and providing proper notice of the Claim to West Bend.

53. Clayview is entitled to indemnity under the Policy without any coinsurance penalties.

54. West Bend does not deny Clayview is entitled to coverage for the Claim.

55. Instead, West Bend erroneously and unreasonably refused and/or failed to pay reasonable funds owed to Clayview under the terms of the Policy.

56. West Bend's refusal and/or failure to pay is wrongful and a breach of contract.

**D.    West Bend's Failure to Pay Business Interruption Costs**

57. Clayview has also suffered lost business revenue as a result of the Loss.

58. The storm damaged most of Clayview's tennis courts, greatly impairing Clayview's ability to offer its normal tennis services.

59. Clayview notified West Bend of its business losses at or around the same time it gave notice of the Claim.

60. However, West Bend again claimed that Clayview had failed to comply with the coinsurance condition with regard to its Business Income and Extra Expense coverage. According to West Bend, Clayview was subject to an even greater penalty of 35.1% for all payments in connection with the business interruption coverage.

61. West Bend has paid Clayview for Business Income losses only from August 2019 through February 2020, but all payments have similarly been reduced by the coinsurance penalty. To date, this has resulted in a $64,285 deduction from the amount owed to Clayview.

62. No payments have been made for any months after February 2020.

63. West Bend's failure to pay Business Income costs is a further breach of the Policy.

**E.      West Bend's Failure to Pay Code Upgrade Costs**

64. On July 27, 2020, Clayview notified West Bend that, during the repair process, the City of Kansas City, Missouri Planning and Development Department (the "City") informed Clayview that it was required to build additional restroom stalls on site to comply with local building ordinances.

65. Clayview was not intending to make any substantive changes to the property; it merely sought to replace the inflatable membrane dome structure on site destroyed in the Loss with a similar structure in the same place and used for the same occupancy, namely, covering outdoor tennis courts so they may be used year-round.

66. Because the Policy contains code upgrade coverage for the "increased cost . . . to comply with enforcement of the minimum standard of the ordinance or law," Clayview requested West Bend agree to reimburse costs incurred to comply with the City's ordinance.

67. On July 27, 2020, Clayview provided an estimate for the costs associated with the code compliance and the relevant City ordinance provisions, and requested additional coverage under the Code Ordinance provisions of the Policy.

68. West Bend failed to respond to Clayview's request for coverage.

69. On August 4, 2020, Clayview followed up on the status of the code upgrade request and again asked West Bend to acknowledge coverage.

70. After this second request, West Bend agreed to investigate the matter, but then once again failed to provide Clayview with any response to its request.

71. West Bend's refusal and/or failure to acknowledge its duties and obligations under the Code Ordinance coverage is a breach of the Policy.

## COUNT I
## BREACH OF CONTRACT

72. Clayview realleges and incorporates by reference all previous allegations as though set forth fully herein.

73. As part of its contractual duties under the Policy, West Bend is obligated to pay Clayview for all covered losses and damages that Clayview incurred as a result of the August 2019 Loss, including but not limited to, Building and Personal Property damages, Business Income and Extra Expense losses, and costs incurred with complying with local building ordinances.

74. Clayview has complied with all the conditions precedent to recovery under the Policy.

75. Clayview has shown it was properly insured at the time of the loss, and thus, is not subject to any coinsurance penalties.

76. West Bend has materially breached its duties and obligations under the Policy by unreasonably refusing and/or failing to pay, in full, all losses and damages arising out of or in connection with the Claim.

77. As a result of its breach of contract, West Bend has deprived Clayview of the benefit of insurance coverage for which substantial premiums were paid and as a result has damaged Clayview.

78. In addition, due to West Bend's initial refusal to provide coverage, its subsequent attempt to provide only partial coverage, and its delay in providing coverage, it has now been more than one year since the Loss occurred and Clayview's property has still not been fully repaired.

79. As a direct and proximate result of this breach, Clayview has suffered and continues to suffer damages in an amount to conform to proof at trial, but in excess of that required for this

Court to exercise jurisdiction, together with costs and disbursements of this action, including but not limited to, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT II
## VEXATIOUS REFUSAL TO PAY A CLAIM

80. Clayview realleges and incorporates by reference all previous allegations as though set forth fully herein.

81. Clayview realleges and incorporates by reference all previous allegations as though set forth fully herein.

82. In every insurance policy there is an implied covenant of good faith and fair dealing that the insurance company will not do anything to injure the right of its insured to receive the benefits of the policy. To fulfill its implied covenant of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of its insured as it gives to its own interests.

83. West Bend has refused to pay Clayview's Claim without reasonable cause or excuse and has instead acted to protect its own financial interests in disregard to the interests of its insured, Clayview.

84. West Bend owes Clayview a duty of good faith and fair dealing and has breached this duty, including but not limited to, engaging in the following acts:

    (a) Refusing to accord any reasonable interpretation to the provisions in the Policy, and refusing to reasonably apply such provisions to the Claim;

    (b) Unreasonably failing and/or refusing to pay benefits due and owed to Clayview under the Policy;

    (c) Unreasonably applying coinsurance penalties in spite of significant contrary evidence;

(d) Failing to conduct a fair, reasonable, complete, and timely investigation of the Claim;

(e) Compelling Clayview to institute this litigation to recover amounts due under the Policy.

85. West Bend's above-described actions constitute a breach of its duty of good faith and fair dealings owed to its insured, Clayview.

86. As a direct and proximate result of West Bend's wrongful conduct, West Bend is liable to Clayview for its reasonable attorneys' fees and costs in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MLake 20, LLC d/b/a Clayview Country Club respectfully requests entry of judgment from this Court in its favor and against Defendant West Bend Mutual Insurance Company as follows:

(a) Actual damages in the amount of $204,662.55 in connection with the Property and Personal Property coinsurance penalties;

(b) Actual damages in the amount of $64,285.00 in connection with the Business Income coinsurance penalties;

(c) Actual damages in the amount of $50,000.00 for code upgrade coverage which West Bend has failed to pay;

(d) Actual damages in an amount to be proven at trial for Business Income and Extra Expense costs which West Bend has failed to pay;

(e) Pre-judgment and post-judgment interest based upon and added to the damages as allowed by law;

(f) Attorneys' fees, costs, and fees associated with this action;

15
Case 4:20-cv-00774-BCW   Document 1   Filed 09/25/20   Page 15 of 16

(g) Consequential damages, including but not limited to, loss of the benefit of the bargain, loss of peace of mind, and expenditure of unreasonable time and money in pursuing the claims herein;

(h) Loss adjustment expenses pursuant to the Policy; and

(i) Such other and further relief to which Clayview may be entitled as this Court deems just and proper.

Dated: September 25, 2020				LATHROP GPM LLP

						By:	 *s/ Noah H. Nash*
							Michael J. Abrams, Bar No. 42196
							Michael.Abrams@LathropGPM.com
							Noah H. Nash, Bar No. 72048
							Noah.Nash@LathropGPM.com
							2345 Grand Boulevard, Suite 2200
							Kansas City, Missouri 64108
							Telephone:  816.292.2000
							Telecopier:  816.292.2001

							*Attorneys for Plaintiff*
							*MLake 20, LLC d/b/a Clayview County Club*